IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| AEROSPACE SOLUTIONS, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>GREGORY W. ABBOTT, in his official capacity as Governor of the State of Texas; and GLENN A. HEGAR, JR., in his official capacity as Texas Comptroller of Public Accounts,<br><br>                Defendants. | Civil Action No. 1:24-cv-1383<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

      1.    In an April press release, Governor Greg Abbott touted Texas as a "model for the nation" after it was named the "Best State for Business" by Chief Executive Magazine for the twentieth year in a row.[1] The release celebrated Texas for attracting the most job-creating business relocation and expansion projects in the nation for the twelfth year in a row, adding the most jobs in the nation over the past year, and growing its economy faster than the nation as a whole for six straight quarters. "Freedom is a magnet," Governor Abbott said, "and Texas offers entrepreneurs and hardworking Texans the freedom to succeed."

      2.    But not all entrepreneurs and hardworking Texans enjoy the freedom to succeed on an equal basis. For those who want to do business with state agencies, success depends on their race or ethnicity.

---

[1] Press Release, Office of the Governor, "Texas Named Best State for Business for Record-Breaking 20th Year" (Apr. 24, 2024), https://gov.texas.gov/news/post/texas-named-best-state-for-business-for-record-breaking-20th-year.

1

3.  The Texas Historically Underutilized Business Program certifies businesses owned by women, disabled veterans, or individuals of certain races as historically underutilized businesses (HUBs).

4.  When Texas' 150+ state departments and agencies or 100+ public colleges and universities contract for anything from paperclips to new office buildings, a percentage of those contract dollars are exclusively set aside for HUBs. In fiscal year 2023, nearly four *billion* dollars of state expenditures went exclusively to HUBs.[2]

5.  Plaintiff Aerospace Solutions relocated to Texas because of its business-friendly climate and with an eye towards expanding into public sector contracts. However, because Aerospace Solutions does not qualify as a HUB, it is at a significant disadvantage when bidding on state contracts.

6.  In favoring some businesses over others based on the race of their owners, the HUB Program violates the Equal Protection Clause's demand that the government not discriminate on the basis of race. Aerospace Solutions wants the freedom to succeed in Texas, including the ability to compete on a level playing field when bidding for state contracts.

## JURISDICTION AND VENUE

7.  This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court has jurisdiction over federal claims under 28 U.S.C. § 1331 (federal question) and § 1343(a)(3) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201.

---

[2] Bobby Pounds, Fiscal 2023 Annual Hub Expenditure Report, Nov. 15, 2023, https://comptroller.texas.gov/data/purchasing/hub/fy23/execletter-memo.pdf.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this District and because a substantial part of the events or omissions giving rise to the claim occurred and continue to occur in this District.

## PARTIES

9. Plaintiff Aerospace Solutions, LLC, is based in Austin, Texas, and provides staffing, engineering, and technical publication services for the aerospace and technology industries.

10. Defendant Gregory W. Abbott is the Governor of the State of Texas. Governor Abbott is sued in his official capacity.

11. Defendant Glenn A. Hegar, Jr., is the Texas Comptroller of Public Accounts, the agency responsible for administering the Texas HUB Program. Comptroller Hegar is sued in his official capacity.

## FACTUAL ALLEGATIONS

### The Texas HUB Program

12. The purpose of the HUB Program is to "promote full and equal business opportunities for all businesses in an effort to remedy disparity in state procurement and contracting in accordance with the HUB utilization goals specified in the State of Texas Disparity Study." 34 Tex. Admin. Code § 20.281.

13. The most recent State of Texas Disparity Study was published in 2010. 34 Tex. Admin. Code § 20.282(4).

14. State law requires state agencies to "increase the contract awards for the purchase of goods or services that the agency expects to make during a fiscal year to historically underutilized businesses based on rules adopted by the comptroller" to implement the state disparity study. Tex. Gov't Code § 2161.181.

15. A "historically underutilized business" is a for-profit corporation, sole proprietorship, partnership, joint venture, or supplier contract with its principal place of business in Texas that is owned, operated, and controlled by an economically disadvantaged person. Tex. Gov't Code § 2161.001(2)(A)-(E).

16. An "economically disadvantaged person" is defined as a person who: "(A) is economically disadvantaged because of the person's identification as a member of a certain group, including: (i) Black Americans; (ii) Hispanic Americans; (iii) women; (iv) Asian Pacific Americans; (v) Native Americans; and (vi) veterans as defined by 38 U.S.C. Section 101(2) who have suffered at least a 20 percent service-connected disability as defined by 38 U.S.C. Section 101(16); and (B) has suffered the effects of discriminatory practices or other similar insidious circumstances over which the person has no control." Tex. Gov't Code § 2161.001(3).

17. To become certified as a HUB by the State of Texas, a business must submit an online application affirming under penalty of perjury that it meets the requirements as a historically underutilized business. 34 Tex. Admin. Code § 20.288(a).

18. As part of the HUB application, applicants must select their "company ethnicity" and "company gender" from a dropdown menu.[3]

19. HUB applicants must provide proof of ethnicity in the form of a birth certificate, U.S. passport, U.S. Citizenship and Immigration Services' Certificate of Citizenship/Naturalization, or Bureau of Indian Affairs Tribal Registration Certificate.[4]

---

[3] Texas Statewide HUB System, "Texas HUB Certification Apply for/Renew Certification," https://texashub.gob2g.com/ (last visited Nov. 8, 2024).
[4] Statewide HUB Corporation Checklist, https://comptroller.texas.gov/purchasing/docs/hub-forms/corporation-checklist.pdf (last visited Nov. 8, 2024).

20. Upon information and belief, HUB applicants are not asked about or required to attest to particular instances of having "suffered the effects of discriminatory practices or other similar insidious circumstances over which the person has no control" pursuant to Tex. Gov't Code § 2161.001(3).

21. Texas sets statewide HUB utilization goals that apply to all state contracts. The statewide HUB utilization goals are: 11.2% for heavy construction other than building contracts; 21.1% for all building construction, including general contractors and operative builders contracts; 32.9% for all special trade construction contracts; 23.7% for all professional services contracts; 26.0% for all other services contracts; and 21.1% for all commodities contracts. 34 Tex. Admin. Code § 20.284(b).

22. State agencies must establish HUB utilization goals for each procurement category, with the statewide HUB utilization goals as the "starting point" for establishing agency-specific goals. *Id.* § 20.284(c).

23. Additionally, for all contracts over $100,000, a HUB subcontracting plan is required if the agency determines that subcontracting opportunities are probable. *Id.* § 20.284(d)(2)(H); 34 Tex. Admin. Code § 20.285(b).

24. Bids that do not include a HUB subcontracting plan must be rejected. Tex. Gov't Code § 2161.252; 34 Tex. Admin. Code § 20.285(b)(3).

25. Bidders can comply with the HUB subcontracting plan requirement in several ways. Bidders can (1) submit documentation that "100% of subcontracting opportunities will be performed by HUBs"; (2) submit documentation that it will "utilize one or more HUBs to perform subcontracts with a total value that will meet or exceed the HUB utilization goal"; (3) submit a statement that the bidder will self-perform by fulfilling the entire contract—including the HUB

utilization goal—with its own equipment, supplies, materials, or employees; or (4) subcontract with its HUB protégé business as part of the Comptroller's HUB Mentor-Protégé Program. 34 Tex. Admin. Code § 20.285(d)(2)-(5).

26. A bidder who cannot comply with the HUB subcontracting plan requirement in one of the above ways must demonstrate good faith efforts through the "solicitation method." 34 Tex. Admin. Code § 20.285(d)(1).

27. The solicitation method requires dividing the contract into "reasonable lots or portions consistent with prudent industry practices," then providing written notice of the subcontracting opportunities to "at least two trade organizations or development centers that serve economically disadvantaged persons." *Id*.

28. The written notice must include the scope of work, location to review plans and specifications, information about bonding and insurance requirements, required qualifications, and a designated contact person to handle subcontractor communications. *Id*.

29. The notices must be provided at least seven working days prior to the bid submission date, and the bidder must provide documentation of its efforts, including copies of the notices and "relevant correspondence with the recipients" as part of the HUB subcontracting plan. *Id*.

**Plaintiff Aerospace Solutions**

30. Aerospace Solutions is a wholly-owned subsidiary of Open Holdings, LLC. Aerospace Solutions provides staffing services to the aerospace and transportation industries, while sister company Openwork Health, LLC, provides nationwide healthcare staffing services, and Openwork, LLC, serves a range of other corporate clients' commercial staffing needs.

31. Aerospace Solutions has significant experience staffing engineering, professional, technical, assembly, and production roles for national defense contractors.

32. Given its success in the private sector, Aerospace Solutions is expanding into public sector contracting and wants to compete for Texas state contracts. With over 150 state agencies and over 100 public colleges and universities, Texas is a significant market for Aerospace Solutions' public sector expansion.

33. Aerospace Solutions' two sister companies are already entrenched in public sector contracting.

34. Openwork Health has won contracts with the Texas Department of Health and Human Services, Mississippi Veterans, South San Antonio Independent School District, the State of Oklahoma, and Gwinnett County (Georgia) Public Schools.

35. Openwork, LLC has won contracts with the Employee Retirement System of Texas, Texas School for the Blind and Visually Impaired, the City of Temple, San Jacinto College, and the Bibb County (Georgia) School District. None of the contracts with Texas state agencies included HUB utilization goals.

36. Public sector bids for all three subsidiary companies are managed by the Vice President for Public Sector. The Vice President writes and submits public sector bids, manages public sector contracts, and handles reporting and compliance for all public contracts.

37. Despite their extensive experience, Aerospace Solutions' sister companies have struggled to find reliable HUB subcontractors when submitting bids for Texas state contracts. The alternative, proving a good faith effort under 34 Tex. Admin. Code § 20.285(d)(1), is costly and time consuming, with no guarantee that a bidder's good faith efforts will be accepted.

**The HUB Program's Impact on Aerospace Solutions**

38. Despite identifying state contracts it was qualified, willing, and able to bid on, the significant HUB utilization goals for services contracts have prevented Aerospace Solutions from expanding into the public sector work with Texas state agencies.

39. For example, in 2023 the Texas Department of Transportation issued a request for proposal (RFP) for employee search and recruitment services. Ex. 1. Pursuant to the state HUB Program, the RFP included a 26% HUB utilization goal per fiscal year and required each bidder to include a HUB subcontracting plan with its bid. *Id*. at 1-5 [PDF p. 53]. Bids that did not include a HUB subcontracting plan were automatically rejected pursuant to Tex. Gov't Code § 2161.252(b). *Id*.

40. HUB bidders could fulfill the 26% HUB utilization goal through self-performance. 34 Tex. Admin. Code § 20.285(d)(4). Because Aerospace Solutions is not a HUB, it was required to subcontract with a HUB in order to keep its bid from being rejected.

41. If Aerospace Solutions subcontracted with a HUB, it would have been required to give away over a quarter of the contract's value to a competitor for work that Aerospace Solutions could otherwise do in-house.

42. Due to the 26% HUB utilization goal, Aerospace Solutions would have had to price its bid higher to compensate for the percentage of the total contract value that would be given away to a HUB subcontractor.

43. Aerospace Solutions' competitors that are certified HUBs are not required to give away the entire value of a HUB utilization goal or to compensate for such loss in their bids.

44. Instead of taking the time and effort to submit a non-competitive bid, Aerospace Solutions chose not to respond to the Texas Department of Transportation RFP.

45. Aerospace Solutions has no plain, speedy, and adequate remedy at law for this violation of its right to equal protection. Damages are indeterminate or unascertainable and would not fully redress Aerospace Solutions' harm.

## CLAIMS FOR RELIEF

### First Cause of Action

### Violation of the Equal Protection Clause of the Fourteenth Amendment, through 42 U.S.C. § 1983

46. Aerospace Solutions alleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

47. The HUB Program treats businesses differently based on the race of their owners.

48. Because the HUB Program grants special preferences to businesses based on the race of the business' owners, it must satisfy strict scrutiny.

49. Texas does not have a compelling interest that justifies the HUB Program's racial classifications.

50. Texas lacks a strong basis in evidence that its HUB utilization goals are related to remedying the past or present effects of racial discrimination in any particular industry or in the state.

51. The HUB Program's racial classifications are not narrowly tailored to meet any such compelling interest.

52. Because the HUB Program uses racial classifications to award public contracts, furthers no compelling interest, and is not narrowly tailored, it violates the Equal Protection Clause.

53. Pursuant to the HUB Program, Defendants use race as a negative when evaluating bids.

54. Pursuant to the HUB Program, Defendants stereotype individuals and businesses on the basis of race.

55. Aerospace Solutions has been harmed in the past, and unless enjoined by this Court, will continue to be harmed in the future by the HUB Program.

56. Aerospace Solutions remains ready, willing, and able to bid on public contracts absent the challenged HUB Program provisions.

57. Accordingly, Aerospace Solutions is entitled to injunctive and declaratory relief.

## Second Cause of Action

### Violation of Aerospace Solutions' Equal Rights Under the Law, through 42 U.S.C. § 1981

58. Aerospace Solutions alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

59. Aerospace Solutions is a person within the meaning of 42 U.S.C. § 1981.

60. The HUB Program discriminates on the basis of race in violation of 42 U.S.C. § 1981.

61. The Hub Program's granting of preferential treatment on the basis of race denies Aerospace Solutions the full and equal benefit of the laws within the meaning of 42 U.S.C. § 1981.

62. Aerospace Solutions is entitled to injunctive and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Aerospace Solutions respectfully requests that the Court:

1. Declare the Texas HUB Program unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §§ 1981 and 1983;

2. Permanently enjoin the State of Texas from operating the HUB Program or using similar racial preferences in the award of public contracts;

3.  Issue an award of attorneys' fees and costs in this action pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988; and

4.  Provide such other and further relief as the Court deems just and proper.

DATED: November 13, 2024.

                                                     Respectfully submitted,

                                                    /s/ Erin E. Wilcox
                                                    ERIN E. WILCOX
                                                    N.C. Bar No. 40078
                                                    Pacific Legal Foundation
                                                    555 Capitol Mall, Suite 1290
                                                    Sacramento, California 95814
                                                    Telephone: (916) 419-7111
                                                    EWilcox@pacificlegal.org

                                                    *Attorney for Plaintiff*