IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AEROSPACE SOLUTIONS, LLC, | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 1:24-cv-01383-DII |
| | § | |
| GREGORY W. ABBOTT, in his official | § | |
| capacity as Governor of the State of Texas; | § | |
| and | § | |
| GLENN A. HEGAR, in his official capacity | § | |
| as Texas Comptroller of Public Accounts, | § | |
|    *Defendants*. | § | |

## DEFENDANT'S, GREGORY W. ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF TEXAS, MOTION TO DISMISS

TO THE HONORABLE JUDGE ROBERT PITMAN:

COMES NOW Defendant, Gregory W. Abbott, in his official capacity as Governor of the State of Texas, and hereby files this Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and in support thereof would respectfully show unto the Court that Plaintiff lacks standing, its claims are barred by sovereign immunity, and its failure to plead plausible claims warrant dismissal.

### BACKGROUND

Plaintiff, Aerospace Solutions, LLC, filed this lawsuit on November 13, 2024. Complaint, ECF No. 1. The lawsuit challenges the constitutionality of the Texas Historically Underutilized Business Program ("HUB" or "HUB Program"), for which Plaintiff alleges the Comptroller is responsible for administering. *Id.* at ¶¶ 3, 11. Plaintiff claims it opted not to bid on a state contract

because of HUB Program utilization goals. *Id.* at ¶ 38. As an example, Plaintiff cites the 2023 Request for Proposal ("RFP") issued by the Texas Department of Transportation for employee search and recruitment services. *Id.* at ¶ 39. Pursuant to the HUB Program requirements, the RFP included a 26% HUB utilization goal[1] per fiscal year and required each bidder to include a HUB subcontracting plan with its bid. *Id.* Bids that did not include a HUB subcontracting plan were allegedly rejected pursuant to Tex. Gov't Code § 2161.252(b). *Id.*

Plaintiff "provides staffing, engineering, and technical publication services for the aerospace and technology industries." Compl. ¶ 30. Aerospace Solutions is a wholly owned subsidiary of its parent company, Open Holdings, LLC. *Id.* In addition to Aerospace Solutions, Open Holdings owns Openwork Health, LLC, which provides nationwide healthcare staffing services, and Openwork, LLC, which offers staffing services for other corporate and commercial clients. *Id.*

Plaintiff alleges that Openwork Health and Openwork, LLC have successfully secured contracts with various organizations, including the Texas Department of Health and Human Services, among others. *Id.* at ¶ 34–35. However, Plaintiff claims that none of the contracts awarded by Texas state agencies included HUB utilization goals. *Id.* at ¶ 35.

According to Plaintiff, "Aerospace Solutions' sister companies have struggled to find reliable HUB subcontractors when submitting bids for Texas state contracts." *Id.* at ¶ 37.

---

[1] A HUB utilization goal is a specific percentage of state contract dollars that a Texas state agency aims to allocate to businesses certified as Historically Underutilized Businesses (HUBs). These goals are designed to promote opportunities for HUBs, which include businesses owned by women, minorities, and certain disabled veterans in state procurement and contracting. *See generally Kossman Contracting, Co. v. City of Houston*, No. CV H-14-1203, 2016 WL 11473826 (S.D. Tex. Feb. 17, 2016).

Plaintiff's grievance is that the HUB utilization goal of 26% for service contracts imposes a significant burden by requiring Plaintiff to subcontract a substantial portion of any hypothetical contract award to a HUB subcontractor. "Because Aerospace Solutions is not a HUB, it was required to subcontract with a HUB in order to keep its bid from being rejected." *Id.* at ¶ 40. Further, "[d]ue to the 26% HUB utilization goal, Aerospace Solutions would have had to price its bid higher to compensate for the percentage of the total contract value that would be given away to a HUB subcontractor." *Id.* at ¶ 42.

Plaintiff asserts the HUB requirements have effectively prevented Aerospace Solutions from entering the public sector in Texas claiming, "the significant HUB utilization goals for services contracts have prevented Aerospace Solutions from expanding into the public sector work with Texas state agencies." *Id.* at ¶ 38. Plaintiff also claims that HUB certified competitors do not face the same burden as they are "not required to give away the entire value of a HUB utilization goal or to compensate for such loss in their bids." *Id.* at ¶ 43.

Plaintiff seeks declaratory and injunctive relief for alleged violations of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983 and 42 U.S.C. § 1981. *Id.* at ¶¶ 46–62.

## I. LEGAL STANDARDS

### A. Rule 12(b)(1) Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(1), a suit must be dismissed if the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998). Accordingly, "[a] case is properly dismissed for lack of subject matter

jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

### B. Rule 12(b)(6) Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), a defendant may move for dismissal where a plaintiff fails "to state a claim upon which relief can be granted." To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

## II.    ARGUMENTS & AUTHORITIES

### A. Plaintiff Lacks Standing to Bring This Lawsuit Against Governor Abbott.

"[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke jurisdiction must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990). Standing requires plaintiffs to demonstrate they have suffered an "injury in

fact," that is "fairly traceable" to the defendant's conduct, and that will "likely . . . be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Plaintiff's allegations fail to satisfy both the traceability and redressability requirements. To prevail on traceability, a plaintiff must demonstrate that the injury is fairly traceable to the defendant's challenged actions. "[T]here must be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant." *Reule v. Jackson*, 114 F.4th 360, 366 (5th Cir. 2024) (citing *Bennett v. Spear*, 520 U.S. 154, 167 (1997)). Here, Plaintiff fails to show that the alleged harm it suffered is fairly traceable to Governor Abbott's actions. In fact, Plaintiff does not make a single allegation against Governor Abbott in its Complaint.

Courts within this circuit have consistently confirmed that a Governor's service as Chief Executive Officer of a state fails to automatically render him an appropriate defendant in all litigation over state laws and programs. *See, e.g., Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (holding that the plaintiffs lacked standing to sue the Governor of Louisiana where they wholly failed to establish that "any act of [the governor] has caused, will cause, or could possibly cause any injury to them"); *Inclusive Cmtys. Proj., Inc. v. Abbott*, No. 3:17-CV-0440-D, 2018 WL 2415034, at *4 (N.D. Tex. May 29, 2018) (holding that the plaintiff lacked standing to sue the Governor of Texas because it had not made allegations beyond the Governor's general duty to uphold the laws of the State and had alleged no action or threatened action by the Governor to enforce the statute in question). In its Complaint, Plaintiff specifically alleges the "Texas Comptroller of Public Accounts [is] the agency responsible for administering the Texas HUB Program." Compl. at ¶ 11.

Further, in addition to acknowledging Governor Abbott's lack of enforcement authority in this case, Plaintiff also fails to identify a single act or omission of Governor Abbott that caused, or could have caused, Plaintiff's injury. If anything, recent action by the Governor points the other direction. Plaintiff complains that "the HUB Program discriminates on the basis of race." Compl. at ¶ 60; *see also id.* at ¶¶ 2, 6, 16, 18, 47. But in Executive Order GA-55, issued on January 31, 2025, Governor Abbott explained how both the federal and state Constitutions "require that state government always treat people equally regardless of membership in any racial group." EO GA-55 specifically points to the Supreme Court's decision in *Students for Fair Admissions v. Harvard*, 600 U.S. 181 (2023), which, in addition to ending race-based admissions practices, held that "[o]ur Constitution is color-blind" and "eliminating racial discrimination means eliminating *all of it*." *Id.* at 206, 230 (emphasis added). As the Governor explained, the *Constitution* thus prohibits discrimination based on race, including when "awarding … government benefits," EO GA-55, regardless of what any mere statutory provision might say to the contrary.

Nor has Plaintiff demonstrated that its alleged injury will likely be redressed by a favorable decision against Governor Abbott. "To satisfy redressability, a plaintiff must show that 'it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Reule*, 114 F.4th at 368 (citing *Inclusive Cmtys. Project, Inc. v. Dep't of Treas.*, 946 F.3d 649, 655 (5th Cir. 2019)). Absent any enforcement authority regarding the HUB Program, any injunction issued against Governor Abbott would be "utterly meaningless." *Okpalobi*, 244 F.3d at 427.

For these reasons, Plaintiff lacks standing to sue Governor Abbott, and the claims against him in this suit must be dismissed.

### B. Sovereign Immunity Bars Plaintiff's Claims.

Plaintiff's claims against Governor Abbott are also barred by sovereign immunity, which is a jurisdictional bar. *United States v. Tex. Tech. Univ.*, 171 F.3d 279, 285 (5th Cir. 1999) (citing U.S. CONST. amend. XI). Governor Abbott is a state government official, and as such, is entitled to sovereign immunity and Plaintiff's claims against him are barred unless Plaintiff establishes that sovereign immunity has been waived or an exception applies to overcome sovereign immunity. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citation omitted).

*Ex parte Young* allows suits for injunctive or declaratory relief against state officials, provided they have sufficient "connection" to enforcing an allegedly unconstitutional law. 209 U.S. 123 (1908); *see also, In re Abbott,* 956 F.3d 696, 708 (5th Cir. 2020). To invoke the *Ex parte Young* exception, a proponent must establish three essential elements: (1) the suit must be brought against state officials acting in their official capacities; (2) it must seek prospective relief to address ongoing conduct; and (3) it must allege a violation of federal law. *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 737 (5th Cir. 2020).

To satisfy the first element, "a plaintiff must demonstrate that the official has some connection with the enforcement of a policy or act in question." *Ward v. Tex. Dept. of Crim. Just.*, No. H-21-2649, 2021 WL 4066993 at *2 (S.D. Tex. Sep. 7, 2021) (citing *Okpalobi v. Foster*, 244 F.3d 405, 414-15 (5th Cir. 2001) (en banc)). A plaintiff may not rely on a defendant's "general duties" in demonstrating a connection with the act in question; rather, a defendant must have the *particular* duty to perform the act in question. *Richardson v. Flores*, 28 F.4th 649, 654 (5th Cir. 2022) (emphasis added); *see also King v. Sharp*, No. 4:21-CV-01005, 2023 WL 4303637, at *5 (E.D. Tex. June 30, 2023) (rejecting Plaintiffs attempt to apply *Ex parte Young* where they "have not alleged

in their complaint what kind of connection [the defendants] have to employment decisions at [Texas A&M Engineering Extension Service] . . . [and only] speculatively offer that [the defendants] 'must have some connection with the determination of staffing levels, and any reduction in force' given their high-ranking titles within the Texas A&M University System"). A general duty is insufficient to invoke *Ex parte Young*. *Richardson v. Flores*, 28 F.4th 649, 654 (5th Cir. 2022) ("To find the required connection, the district court relied on the Secretary's broad duties to oversee administration of Texas's election laws. Since then, however, our precedent has clarified that the Secretary's 'general duties under the [Texas Election] Code' fail to make the Secretary the enforcer of specific election code provisions.).

The HUB Program is created by Texas statute and administered by the Comptroller, who is tasked with setting HUB utilization goals, certifying businesses, and overseeing subcontracting compliance requirements. *See* TEX. GOV'T CODE §§ 2161.001–2161.252. In fact, Plaintiff specifically acknowledges that Governor Abbott is not responsible for administering and enforcing the HUB Program. Compl. ¶ 11.

Here, since Governor Abbott is not tasked with enforcing the HUB Program, Plaintiff cannot invoke the *Ex parte Young* exception to sovereign immunity because it cannot demonstrate that Governor Abbott has a direct and enforceable connection to the administration or enforcement of the HUB Program. *City of Austin v. Paxton*, 943 F.3d 993, 999–1000 (5th Cir. 2019) (To have the requisite connection to enforcement, an official must have more than "the general duty to see that the laws of the state are implemented, but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.").

Plaintiff merely names Governor Abbott as a defendant due to his general position as Governor of Texas without alleging any specific duty or involvement in enforcing the HUB Program. Absent enforcement authority, there is no ongoing violation of federal law attributable to Governor Abbott, and the relief sought would not address the alleged harm.

Accordingly, Plaintiff's claims against Governor Abbott are barred by sovereign immunity, no *Ex parte Young* exception exists, and the Court should dismiss Plaintiff's claims against Governor Abbott.

### C. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted.

To state a claim upon which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

Here, Plaintiff does not set forth enough facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Conclusory allegations, unwarranted factual inferences, or legal conclusions" are not accepted as true. In re Great Lakes Dredge & Dock Co., 624 F.3d 201, 210 (5th Cir. 2010).

Plaintiff fails to allege any facts that would allow the Court to infer liability on the part of Governor Abbott. The *sole* allegation concerning Governor Abbott comes in the very first paragraph, where Plaintiff observes that the Governor has touted Texas as the best state for business. Compl. at ¶ 1. Besides that, the only other mentions of Governor Abbott are in the case caption and in a paragraph naming him a defendant. *Id.* at ¶ 9. Such fleeting references are insufficient to establish any connection between Governor Abbott and the underlying allegations at issue. Significantly, Plaintiff fails to allege **any** facts establishing that Governor Abbott took any action that could support a claim for relief. Therefore, Plaintiff's claims against Governor Abbott

must be dismissed for failure to state a claim upon which relief could be granted under FED. R. CIV. P. 12(b)(6).

## III.   CONCLUSION AND PRAYER

Plaintiff does not have standing to pursue its claims against Governor Abbott, and its claims are barred by sovereign immunity. Further, Plaintiff has wholly failed to state a claim upon which relief could be granted against Governor Abbott. For the foregoing reasons, Governor Abbott respectfully requests this Court to dismiss Plaintiff's claims against him in their entirety.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ *William H. Farrell*
WILLIAM H. FARRELL
Assistant Attorney General
Texas Bar No. 00796531
biff.farrell@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512)936-2650| FAX: (512) 320-0667

**Attorney for Defendant**

## CERTIFICATE OF SERVICE

    I certify that that on February 26, 2025, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

                                            /s/ *William H. Farrell*
                                            WILLIAM H. FARRELL
                                            Assistant Attorney General