# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **AEROSPACE SOLUTIONS, LLC,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **1:24-cv-01383-RP** |
| | § | |
| **GREGORY W. ABBOTT, in his official** | § | |
| **capacity as Governor of the State of** | § | |
| **Texas; and GLENN A. HEGAR, JR., in** | § | |
| **his official capacity as Texas** | § | |
| **Comptroller of Public Accounts,** | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANT GLENN A. HEGAR, JR.'S
## MOTION TO DISMISS AND BRIEF IN SUPPORT

Jeff Whitfield
State Bar No. 24060825
jeff.whitfield@kellyhart.com
C. Andrew Weber
State Bar No. 00797641
andrew.weber@kellyhart.com
Ruth R. Hughs
State Bar No. 24042788
ruth.hughs@kellyhart.com
John C. Fronk
State Bar No. 24126086
john.fronk@kellyhart.com
KELLY HART &HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Telecopier: (817) 878-9280

**ATTORNEYS FOR GLENN A. HEGAR JR., in his official capacity as Texas Comptroller of Public Accounts**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... iii

I.      INTRODUCTION ................................................................................................ 1

II.     PLAINTIFF'S FACTUAL ALLEGATIONS ...................................................... 2

        A.   Aerospace Solutions Moved to Texas. ..................................................... 2

        B.   Plaintiff Establishes that Other Non-HUBs Have Won Texas Agency Contracts
             in the  Same Industry. ............................................................................... 2

        C.   Aerospace Elects Not to Bid. ................................................................... 3

III.    LEGAL STANDARD ........................................................................................... 4

        A.   Federal Rule of Civil Procedure 12(b)(1). ............................................... 4

        B.   Federal Rule of Civil Procedure 12(b)(6). ............................................... 5

IV.     ARGUMENTS AND AUTHORITIES ................................................................. 6

        A.   Plaintiff Misrepresents Provisions of the Statute that it Attacks. ............ 6

             i.    Paragraph 4 in Plaintiff's Complaint Misstates the Law. .................. 7

             ii.   Paragraph 14 in Plaintiff's Complaint Misstates the Law. ................ 8

             iii.  Paragraph 25 in Plaintiff's Complaint Misstates the Law. ................ 8

             iv.   Paragraph 40 in Plaintiff's Complaint Misstates the Law. .............. 11

             v.    Paragraphs 41 through 43 in Plaintiff's Complaint Misstate the Law. ............ 12

             vi.   Paragraphs 45 through 62 in Plaintiff's Complaint Misstate the Law. ............ 13

        B.   Aerospace Fails to State a Claim Upon Which Relief Can be Granted. .................... 14

        C.   The Section 1981 Claims Should be Dismissed Because There Has Been No
             Actual Loss. ........................................................................................... 16

        D.   Plaintiff Lacks Standing to Sue. ............................................................. 17

             i.    Plaintiff Fails to Allege an Injury in Fact. ....................................... 18

i

ii.    Defendant Did Not Cause Plaintiff's Injury....................................................... 19

iii.    Plaintiff Failed to Allege Any Injuries Would be Redressed by Enjoining the HUB Program. ................................................................................................. 19

V.    CONCLUSION ................................................................................................................ 20

**DEFENDANT GLENN A. HEGAR, JR.'S**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Adarand Constructors v. Pena*,
  515 U.S. 200 (1995) .................................................................................. 18

*Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.*,
  436 F.3d 82 (2d Cir. 2006) ........................................................................ 4

*Arguello v. Conoco, Inc.*,
  330 F.3d 355 (5th Cir. 2003) .................................................................... 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................... 5, 6, 13

*Bell Atlantic Corp. v. Twombly*,
  500 U.S. 544 (2007) ........................................................................... 5, 6, 13

*Cache Valley Elec. Co. v. Utah Dep't of Transp.*,
  149 F.3d 1119 (10th Cir. 1998) ................................................................ 20

*California v. Texas*,
  141 S. Ct. 2104 (2021) .............................................................................. 20

*Carney v. Adams*,
  592 U.S. 53 (2020) ............................................................................... 18, 19

*Evans v. Armenta*,
  134 F. Supp. 3d 1052 (E.D. Ky. 2015) ...................................................... 6

*Fulani v. Bentsen*,
  35 F. 3d 49 (2d Cir. 1994) .......................................................................... 5

*Henderson v. Jewel Food Stores, Inc.*,
  No. 96 C, 1996 WL 617165 (N.D. Ill. Oct. 23, 1996) .............................. 17

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
  143 F.3d 1006 (5th Cir. 1998) .................................................................... 5

*In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*,
  87 F.4th 315 (6th Cir. 2023) ...................................................................... 5

*City of Jacksonville v. Jacksonville Shipyards, Inc.*,
  508 U.S. 656 (1993) .................................................................................. 19

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................... 5, 18

*Mann Constr., Inc. v. United States*,
   86 F.4th 1159 (6th Cir. 2023) ................................................................................. 19

*MGM Resorts International Global Gaming Dev. v. Malloy*,
   861 F.3d 40 (2017) ................................................................................................. 18

*Morris v. Dillard Dep't Stores, Inc.*,
   277 F.3d 743 (5th Cir. 2001) ..................................................................... 15, 16, 17

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ................................................................................... 4

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ........................................................................................... 19, 20

*Stockman v. Fed. Election Comm'n*,
   138 F.3d 144 (5th Cir. 1998) ................................................................................... 4

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ................................................................................................. 4

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ........................................................................................... 4, 17

*True v. Robles*,
   571 F.3d 412 (5th Cir. 2009) ................................................................................... 6

*Warth v. Seldin*,
   422 U.S. 490 (1975) ........................................................................................... 5, 14

**Statutes**

42 U.S.C. § 1981 ................................................................................................ 16, 17

Tex. Gov. Code § 2155.074 ............................................................... 7, 8, 11, 15

Tex. Gov. Code § 2161 ....................................................................... 6, 7, 9, 11

Tex. Gov. Code § 2161.063 ........................................................................... 7

Tex. Gov. Code § 2161.181 ........................................................................ 7, 8

**DEFENDANT GLENN A. HEGAR, JR.'S**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................................Passim

Federal Rule of Civil Procedure 12(b)(6) ................................................................Passim

**Regulations**

34 TAC § 20................................................................................................................Passim

34 TAC § 20.285.........................................................................................................Passim

TO THE HONORABLE COURT:

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Glenn A. Hegar, Jr. ("**Defendant**") respectfully moves this Court to dismiss Plaintiff Aerospace Solutions, LLC's ("**Aerospace**" or "**Plaintiff**") claims. In support of the foregoing, Defendant respectfully shows the Court as follows:

## I. <u>INTRODUCTION</u>

Plaintiff requests that this Court declare a statute unconstitutional and permanently enjoin the State of Texas from operating a Historically Underutilized Businesses ("HUB") program[1]. However, the statute that Plaintiff describes and then attacks in its Complaint does not exist in the way Plaintiff presents. Plaintiff's allegations are rooted in a misunderstanding or misrepresentation of the law, and the concepts that Plaintiff misunderstands or misrepresents are so fundamental that it's as if Plaintiff seeks relief from a statute that simply does not exist. That is to say, Plaintiff wantonly inserts language, requirements, and mandates into the statute's language, which does not exist in the codified version. Plaintiff then argues that these concepts, which do not exist in the program, are the concepts that caused it harm. When you evaluate the actual statute rather than Plaintiff's inaccurate depiction, it becomes clear that Plaintiff fails to state a claim upon which relief can be granted. Accordingly, Plaintiff's claims should be dismissed.

Plaintiff's Complaint is also devoid of adequate factual allegations to support its claims. Instead, Plaintiff affirmatively alleges facts that show its claims should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

---

[1] The Texas Legislature may end the HUB Program in Texas while this litigation is pending. Bills currently navigating the legislative process would either completely dismantle (HB 3573), or materially alter (HB 167), the HUB Program. In an effort to promote judicial efficiency, Defendant encouraged Plaintiff to abate this matter while those bills are before the Legislature. Unfortunately, Plaintiff refused.

1

**DEFENDANT GLENN A. HEGAR, JR.'S**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

Because Plaintiff fails to allege sufficient, plausible facts which, if taken as true, support its claims, the Complaint against Defendant should be dismissed.

## II. PLAINTIFF'S FACTUAL ALLEGATIONS

### A.    Aerospace Solutions Moved to Texas.

Plaintiff Aerospace allegedly relocated to Texas because of Texas's business-friendly climate and to expand into public sector contracts. [Complaint ¶ 5]. Aerospace is based in Austin, Texas, and allegedly provides staffing, engineering, and technical publication services for the aerospace and technology industries. [*Id.* at ¶ 9]. Without identifying a single previous contract it has entered into or any underlying factual information as to the scope of its capabilities as a company, Aerospace asserts that it has "significant experience staffing engineering, professional, technical, assembly, and production roles for national defense contractors." [*Id.* at ¶ 31]. In conclusory fashion and without explanation, Plaintiff generally alleges that "because Aerospace Solutions does not qualify as a HUB, it is at a significant disadvantage when bidding on state contracts." [*Id.* at ¶ 5].

### B.    Plaintiff Establishes that Other Non-HUBs Have Won Texas Agency Contracts in the Same Industry.

Aerospace affirmatively alleges that other staffing companies in similar circumstances have won state-government contracts. [*Id.* at ¶¶ 33–35]. Aerospace alleges that it is a wholly-owned subsidiary of Open Holdings, LLC ("Open Holdings") and is a sister company to Openwork Health, LLC ("Openwork Health"), both of which also provide staffing services. [*Id.* at ¶ 30]. Plaintiff alleges that these non-parties have generally struggled to find HUB subcontractors. [*Id.* at ¶ 37]. Yet, Aerospace also expressly alleges that both Open Holdings and Openwork Health

"are already entrenched in public sector contracting." [*Id.* at ¶ 33]. Indeed, Aerospace alleges that both staffing companies have won multiple contracts in Texas and other states. [*Id.* at ¶¶ 34–35].

## C.    Aerospace Elects Not to Bid.

Again, without any supporting facts, Aerospace makes conclusory allegations that it is qualified, willing, and able to bid on government contracts. [*Id.* at ¶ 38]. For example, Aerospace identifies a 2023 Texas Department of Transportation request for proposal ("RFP") that it attached to its Complaint. [*Id.* at ¶ 39; Complaint Ex. 1]. That RFP identified an aspirational—not mandatory—goal of 26% HUB utilization for all service contracts per fiscal year. [Complaint Ex. 1, p. 55]. Without identifying any information such as the race, gender, or veteran status of the individuals who have an interest in the company or of those who actively participate in the company's control, operation, or management, Aerospace makes the conclusory allegation that it does not qualify as a HUB and was, therefore, at a significant disadvantage when bidding on the contract. [Complaint at ¶¶ 5, 40].

With reference to its failure to bid on the RFP, Plaintiff alleges that "*if* Aerospace subcontracted with a HUB, it would have been required to give away over a quarter of the contract's value to a competitor for work that Aerospace Solutions could otherwise do in-house." [*Id.* at ¶ 41 (emphasis added)]. Plaintiff also alleges that *if* Aerospace had to subcontract with a HUB, "it would have had to price its bid higher to compensate for the percentage of the total contract value that would be given away to a HUB subcontractor." [*Id.* at ¶ 42]. But, Plaintiff ignores that it did not have to subcontract with a HUB under the relevant law or rules,[2] and, in turn, it did not have to give away any work to a competitor or increase its bid. Ultimately,

---

[2] 34 TAC §§ 20.285(d)(4) ("The respondent may use the self-performing method . . . .").

**DEFENDANT GLENN A. HEGAR, JR.'S**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

Aerospace "***chose*** not to respond to the Texas Department of Transportation RFP." [*Id.* at ¶ 44 (emphasis added)].

Aside from conclusory recitations of legal elements, inaccurately stated statutory provisions, and references to press releases or studies, the above allegations are the sum total of Plaintiff's factual allegations. These allegations are inadequate to prove Plaintiff's claims. To the contrary, these allegations affirmatively demonstrate that Plaintiff's claims should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted.

### III.  LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1).

Article III of the U.S. Constitution limits the jurisdiction of federal courts to cases in which the party seeking relief has standing, which has been called "perhaps the most important" of the case-or-controversy limitations placed upon federal judicial power. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006). Motions to dismiss filed under Rule 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A federal court has no subject matter jurisdiction over the case unless the plaintiff establishes standing, and the plaintiff bears the burden of proof to demonstrate that jurisdiction is proper. *See id.*; *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

To establish standing, the plaintiff must show: "(i) that [it] suffered an injury in fact . . . ; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Because

these three elements of standing are "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). On a motion to dismiss, a complaint's standing allegations must satisfy the same requirements as its other allegations—*i.e.*, it must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*, 87 F.4th 315, 320–21 (6th Cir. 2023).

In short, at the pleading stage, Plaintiff must "clearly allege facts demonstrating" that it is the "proper party to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The focus of the standing analysis is on "the party seeking to invoke federal jurisdiction, rather than the justiciability of the issue at stake in the litigation." *Fulani v. Bentsen*, 35 F. 3d 49, 51 (2d Cir. 1994)). A motion under 12(b)(1) should be granted "if it appears certain that the plaintiff cannot prove any set of facts in support of [its] claim that would entitle [it] to relief." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

**B.    Federal Rule of Civil Procedure 12(b)(6).**

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure of the pleading to state a claim upon which relief can be granted . . . ." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a Plaintiff must plead sufficient facts to show it has a plausible claim—mere speculation, conclusory allegations, or mere parroting of legal elements is not enough. *See Bell Atlantic Corp. v. Twombly*, 500 U.S. 544, 545 (2007). While a complaint attacked by a motion to dismiss for failure to state a claim upon which relief can be

granted does not need highly detailed factual allegations, a plaintiff's obligation to provide the grounds of its entitlement to relief requires more than labels and conclusions—a formulaic recitation of the elements of a cause of action is insufficient. *See id.* at 556–57. A claim does not have facial plausibility when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Though courts must accept all factual assertions as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Twombly*, 550 U.S. at 556). Ultimately, "dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 555).

## IV. ARGUMENTS AND AUTHORITIES

### A. Plaintiff Misrepresents Provisions of the Statute that it Attacks.

The HUB Program is codified in Chapter 2161 of the Government Code, and further described in the rules found at 34 TAC Chapter 20, Subchapter D, Division 1. Plaintiff does at least cite to Chapter 2161 of the Texas Government Code and the associated rules, but it then critiques the HUB Program by describing requirements that are not in the statute or rules. While factual allegations in the Complaint should be presumed true when considering a Rule 12 motion, the presumption of truth does not apply to legal conclusions or legal arguments set forth in the Complaint. *See Iqbal*, 556 U.S. at 678–680. "Thus, it is incumbent upon the Court to first sort through the plaintiff's complaint and separate the factual allegations, which are accepted as true and contribute to the viability of the plaintiff's claim, from the legal conclusions that are only masquerading as facts and need not be accepted." *Evans v. Armenta*, 134 F. Supp. 3d 1052, 1057

(E.D. Ky. 2015). This is especially important when, as here, the legal conclusions are verifiably incorrect from the plain wording of the statute.

Put simply, Plaintiff's legal conclusions misstate the law at issue. These misstatements are so contrary to the meaning of the statute, and to how the statute is implemented, that Plaintiff is essentially suing on a statute that does not exist. These misunderstandings or misrepresentations of law permeate the Complaint. Accordingly, these improper legal conclusions have been set out below, and then corrected using the actual language from the statute and rules.

### i.    Paragraph 4 in Plaintiff's Complaint Misstates the Law.

Paragraph 4 of Plaintiff's Complaint states:

> When Texas' 150+ state departments and agencies or 100+ public colleges and universities contract for anything from paperclips to new office buildings, a percentage of those contract dollars ***are exclusively set aside*** for HUBs.

[Complaint ¶ 4 (emphasis added)]. Plaintiff asserts a legal conclusion that a percentage of all funds "are exclusively set aside for HUBS." [*Id.*]. This is not accurate. No language exists in either Chapter 2161 of the Government Code or the Comptroller's rules that require or even allow contract dollars to be exclusively set aside for HUBs. *See* TEX. GOV. CODE §§ 2161 et seq.; 34 TAC §§ 20 et seq. In fact, unless a bid by a HUB has been determined to be the best value for a state agency, it may not be awarded a state contract. TEX. GOV. CODE § 2155.074. In chapter 2161, the Texas Legislature merely requires that the comptroller "***encourage*** state agencies to use historically underutilized businesses," TEX. GOV. CODE § 2161.063 (emphasis added), or a state agency "make a ***good faith effort*** to increase the contract awards for the purchase of goods or services that the agency expects to make during a fiscal year to historically underutilized businesses . . . .," TEX. GOV. CODE § 2161.181 (emphasis added). No language in the statute or

rules allows (let alone requires) money or contracts to be set aside exclusively for HUBs. Therefore, this legal conclusion is inaccurate and should be disregarded.

### ii.    Paragraph 14 in Plaintiff's Complaint Misstates the Law.

Paragraph 14 of Plaintiff's Complaint states:

> State law requires state agencies to "increase the contract awards for the purchase of goods or services that the agency expects to make during a fiscal year to historically underutilized businesses based on rules adopted by the comptroller" to implement the state disparity study. Tex. Gov't Code § 2161.181.

[Complaint ¶ 14]. Plaintiff's Complaint conveniently leaves out some of the most important language from this portion of the statute, and in doing so Plaintiff suggests that the Legislature mandates that contract awards and government dollars flow to HUBs. Quoting the entire statute corrects this mischaracterization.

> A state agency, including the comptroller, ***shall make a good faith effort*** to increase the contract awards for the purchase of goods or services that the agency expects to make during a fiscal year to historically underutilized businesses based on rules adopted by the comptroller to implement the disparity study described by Section 2161.002(c).

TEX. GOV. CODE § 2161.181. The actual wording of the statute shows there is no mandated increase in contract awards, spending, or any set-aside for HUBs. There is only the requirement of a good faith effort to increase contract awards to HUBs that meet the best value standard under Section 2155.074 of the Government Code. Therefore, the legal conclusion asserted in paragraph 14 is also inaccurate and should be disregarded.

### iii.    Paragraph 25 in Plaintiff's Complaint Misstates the Law.

In Paragraph 25, Plaintiff alleges:

> Bidders can comply with the HUB subcontracting plan requirement in several ways. Bidders can (1) submit documentation that "100% of subcontracting opportunities will be performed by HUBs"; (2)

8

> submit documentation that it will "utilize one or more HUBs to perform subcontracts with a total value that will meet or exceed the HUB utilization goal"; (3) submit a statement that the bidder will self-perform by fulfilling the entire contract—***including the HUB utilization goal***—with its own equipment, supplies, materials, or employees; or (4) subcontract with its HUB protégé business as part of the Comptroller's HUB Mentor-Protégé Program. 34 Tex. Admin. Code § 20.285(d)(2)–(5).

[Complaint ¶ 25 (emphasis added)].  Plaintiff misstates the Legislature's requirements by inserting language that does not exist.  Contrary to Plaintiff's allegation, neither the statute nor the associated rules require a respondent to fulfill any portion of the HUB utilization goals.  *See* TEX. GOV. CODE §§ 2161 et seq.; 34 TAC §§ 20 et seq.  Furthermore, neither the statute nor associated rules require a bidder that intends to self-perform a contract to be a HUB or to be in any way associated with a HUB.  *Id.*  The actual language from the rules regarding self-performing a contract has been copied below to show there is no requirement for a self-performing bidder (or any bidder) to fulfill any portion of the aspirational (not mandatory) HUB utilization goals.

> (1) Self-performing Method. The respondent may use the self-performing method to demonstrate a good faith effort for any subcontracting opportunity by providing a statement of how it intends to fulfill the entire contract, including each subcontracting opportunity, with its own equipment, supplies, materials, and employees. The respondent shall provide the following if requested by the procuring state agency:
>
> (A) evidence of existing staffing to meet contract objectives;
>
> (B) monthly payroll records showing employees engaged in the contract;
>
> (C) on-site reviews of company headquarters or work site where services are to be performed; and
>
> (D) documentation proving employment of qualified personnel holding the necessary licenses and certificates required to perform the work.

34 TAC §§ 20.285(d)(4). Plaintiff's Complaint also incorporates an RFP confirming that a self-performing bidder can complete the contract itself. [*See* Complaint Ex. 1, pp. 55, 57, 59 (also establishing that "being a certified HUB does not exempt a respondent from completing the HSP requirement.")].

### I.3.7   Method 4: Respondent Does Not Intend to Subcontract

When the respondent plans to complete all contract requirements with its own equipment, supplies, materials and/or employees, it is still required to complete an HSP.

The respondent must complete the "Self-Performance Justification" portion of the HSP, and attest that it does not intend to subcontract for any goods or services, including the class and item codes identified in Section I.3.5. In addition, the respondent must identify the sections of the proposal that describe how it will complete the Scope of Work using its own resources or provide a statement explaining how it will complete the Scope of Work using its own resources. The respondent must agree to comply with the following if requested by the Department:

- provide evidence of sufficient respondent staffing to meet the solicitation requirements,
- provide monthly payroll records showing the respondent staff fully dedicated to the contract,
- allow the Department to conduct an onsite review of company headquarters or work site where services are to be performed, and,
- provide documentation proving employment of qualified personnel holding the necessary licenses and certificates required to perform the Scope of Work.

[Complaint Ex. 1, p. 57].

➤    If you will not be subcontracting any portion of the contract and will be fulfilling the entire contract with your own resources (i.e., employees, supplies, materials and/or equipment), complete:

☐ Section 1 - Respondent and Requisition Information
☐ Section 2 a. - No, I will not be subcontracting any portion of the contract, and I will be fulfilling the entire contract with my own resources.
☐ Section 3 - Self Performing Justification
☐ Section 4 - Affirmation

[Complaint Ex. 1, p. 59]. Essentially, all that is required from the self-performing bidder is to "explain how [the] company will perform the entire contract with its own employees, supplies, materials, and/or equipment. [Complaint Ex. 1 p. 57, 59, 63]. Effectively, the bidder merely needs to show that it is qualified, willing, and able to fulfill the entire contract.

However, the allegations in Plaintiff's Complaint add a requirement that is not in the statute. Plaintiff alleges that the HUB utilization goal is mandatory, and that the bidder is required to fulfill that goal. This allegation is not accurate. There is no requirement to fulfill any part of a

HUB utilization goal.  *See* TEX. GOV. CODE §§ 2161 et seq.; 34 TAC §§ 20 et seq.  All that is required is that the respondent make a "good faith effort" in developing a HUB Subcontracting Plan ("HSP")—in the case of a self-performing respondent, verifying that it is willing and able to complete the entire contract.  34 TAC §§ 20.285(d)(4).  Furthermore, any self-performing vendor will be considered for award using the best value standard under Section 2155.074 of the Government Code.[3]  TEX. GOV. CODE § 2155.074.  In short, a bidder, such as Aerospace, can submit its response and win the contract regardless of whether it is a HUB.  Therefore, these legal conclusions should also not be accepted and should be disregarded.

### iv.    Paragraph 40 in Plaintiff's Complaint Misstates the Law.

Plaintiff makes similarly inaccurate legal conclusions in Paragraph 40 as in Paragraph 25.

> HUB bidders could fulfill the 26% HUB utilization goal through self-performance. 34 Tex. Admin. Code § 20.285(d)(4). Because Aerospace Solutions is not a HUB, it was required to subcontract with a HUB in order to keep its bid from being rejected.

[Complaint ¶ 40].  Again, Plaintiff inserts language and requirements that do not exist in the statute or rules.  Bidders are not required to fulfill any portion of the aspirational HUB utilization goal.  Similarly, Aerospace was not required to subcontract with a HUB in order to keep its bid from being rejected.  On the contrary, all Aerospace had to do was submit its response to the RFP with an HSP that stated it would self-perform the contract—essentially, all Aerospace had to do was show that it was willing and able to fulfill the entire contract.  [34 TAC §§ 20.285(d)(4); Complaint Ex. 1 p. 63].  This simple act would have demonstrated Aerospace's compliance and good faith effort regarding Chapter 2161 and the associated rules.  Importantly, everyone (even HUBs) must

---

[3] The best value standard does not assign value to subcontracting or HUB certification.  TEX. GOV. CODE § 2155.074. No points are awarded, withheld, or deducted based on the vendor's decision to self-perform.  *Id.*

**DEFENDANT GLENN A. HEGAR, JR.'S**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

submit an HSP (regardless of whether they intend to self-perform, solicit, subcontract, or otherwise

perform the contract).

> In the HSP, a respondent must indicate whether it is a Texas certified HUB.  Being a certified HUB does
> not exempt a respondent from completing the HSP requirement.

[Complaint Ex. 1, p. 55].  Everyone who responds to the RFP—HUB or not—must show their

good faith effort in developing an HSP.  Again, as Aerospace could have done here, this step can

be as simple as showing that the respondent is qualified, willing, and able to self-perform the entire

contract.

Therefore, it is an inaccurate legal conclusion to state that bidders had to fulfill any portion

of the HUB utilization goal.  It is also an inaccurate legal conclusion to state that Aerospace was

required to subcontract with a HUB to keep its bid from being rejected.  These improper legal

conclusions should also be disregarded.

### v.    Paragraphs 41 through 43 in Plaintiff's Complaint Misstate the Law.

Plaintiff's misunderstanding or misrepresentation of the law spreads to almost all its

allegations.  For example, in Paragraph 43, Plaintiff simply assumes certified HUBs are not subject

to the same requirements as Aerospace.  Plaintiff states, "Aerospace Solutions' competitors that

are certified HUBs are not required to give away the entire value of a HUB utilization goal or to

compensate for such loss in their bids."  [Complaint ¶ 43].  While this is not a purely legal

conclusion, the allegation is flawed because it is premised on the inaccurate legal conclusion that

HUBs can self-perform but that Aerospace cannot.  As shown above, Plaintiff's legal conclusion

on this point is not true.[4]  [*Supra* Section IV(A)(iii)–(iv)]; 34 TAC §§ 20.285(d)(4).  HUBs are

required to perform the same HSP as Aerospace would be required to perform.  Plaintiff's own

---

[4] The allegations in paragraphs 41 and 42 are similarly premised on these inaccurate legal conclusions and are, therefore, essentially baseless.

**DEFENDANT GLENN A. HEGAR, JR.'S**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

exhibit, the RFP attached to its pleading, expressly states as much. [Complaint Ex. 1, p. 55 ("Being a certified HUB does not exempt a respondent from completing the HSP requirement.")]. Accordingly, under the statute, whatever price-increasing stressors Aerospace complains of,[5] HUBs would be subject to the same price-increasing stressors. The "time and effort" to submit a bid is the same for Aerospace as it is for any HUB or other bidder. Therefore, the portions of these allegations that are based in improper legal conclusions should be disregarded.

### vi.    Paragraphs 45 through 62 in Plaintiff's Complaint Misstate the Law.

Paragraphs 45 through 62 of Plaintiff's Complaint are entirely legal conclusions that merely recite the elements of its alleged claims. Even with its attempt to "reallege[ ] and incorporate[ ] by reference the allegations in the preceding paragraphs of this Complaint," Aerospace makes nothing more than generalized, conclusory allegations that repeat legal elements. *See Bell Atlantic Corp. v. Twombly*, 500 U.S. 544, 545 (2007). Accordingly, this Court "is not bound to accept [these allegations] as true." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

In summary, Plaintiff attempts to add non-existent requirements into the statute and associated rules. These non-existent requirements would include "set asides," mandates to award contracts to HUBs, requirements for respondents to fulfill utilization goals (even if self-performing), and requirements to subcontract. As shown above, none of these requirements are contained in the statute or rules. Essentially, Plaintiff sues on a non-existent statute. Plaintiff describes legal requirements that do not exist in the HUB Program (or state contracting, generally) and then alleges that these non-existent requirements have caused Plaintiff harm. Such an action

---

[5] Notably, Plaintiff fails to provide any evidence or explanation for its conclusory assertion that, "Due to the 26% HUB utilization goal, Aerospace Solutions would have had to price its bid higher to compensate for the percentage of the total contract value that would be given away to a HUB subcontractor." [Complaint ¶ 42].

**DEFENDANT GLENN A. HEGAR, JR.'S**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

should not be allowed to proceed. Because this Court is not required to presume legal conclusions—especially, inaccurate ones—to be true, these portions of Plaintiff's Complaint should be disregarded.

**B.    Aerospace Fails to State a Claim Upon Which Relief Can be Granted.**

Once Plaintiff's inaccurate legal conclusions are removed, the only remaining factual allegations specific to Aerospace's claims are generalized and conclusory allegations that the "HUB Program violates the Equal Protection Clause's demand that the government not discriminate on the basis of race." [Complaint ¶ 6]. These allegations are not only conclusory but are nothing more than a generalized grievance. *See Warth*, 422 U.S. 490, 498 (1975). Therefore, Plaintiff fails to state a claim upon which relief can be granted and its claims should be dismissed.

Further, despite making the conclusory allegations that Aerospace "has significant experience staffing engineering, professional, technical, assembly, and production roles for national defense contractors," [Complaint ¶ 31], and that it is "expanding into public sector contracting and wants to compete for Texas state contracts," [*Id.* at ¶ 32], Aerospace affirmatively alleges that it "***chose*** not to respond to the Texas Department of Transportation RFP." [*Id.* at ¶ 44]. Aerospace allegedly chose not to bid on the contract because of the "time and effort" it would have taken to submit a "non-competitive bid." [*Id.*]. These two excuses are illogical and inaccurate for the following reasons.

First, under the HUB Program statute and associated rules, Aerospace's solicitation response would not have taken any more time or effort to complete than any other bidder because the requirements are the same for every bidder. As shown above, everyone who applies must submit an HSP, even HUBs. [*Supra* Section IV(A)(iii)–(iv); Complaint Ex. 1, p. 55]. In fact, Aerospace's response would likely have been easier than many other applicants because it

affirmatively alleged it was able to and wanted to self-perform the entire contract. [*See* Complaint ¶ 41]. Aerospace could have fulfilled the good faith requirement (that every bidder must show, HUB or not) by explaining that Aerospace was willing and able to perform the entire contract. [*See* TAC § 20.285(d)(4)]. In short, under the statute, Aerospace's solicitation response process was the same as every other bidder's and might have been easier because it wanted to self-perform.

Second, Aerospace could have submitted a competitive bid. As shown above, Aerospace was under no obligation or requirement to subcontract. [*Id.*]. Instead of having to increase its price, which Aerospace alleged it would have to do when it incorrectly claimed it would have to hire subcontractors, Aerospace could have either reduced its bid price or simply competed against other bidders who partnered with subcontractors. Regardless, under the HUB Program statute and rules, Aerospace could have submitted a competitive bid. This is especially true because the best value standard does not assign value to subcontracting or HUB certification, and no points are awarded, withheld, or deducted based on the vendor's decision to self-perform. *See* TEX. GOV. CODE § 2155.074. Therefore, if Plaintiff was injured, it was due to its own decision not to respond to the RFP.

Having shown, immediately above, that Aerospace's excuses for not bidding on the government contract in question are illogical and inaccurate, it is clear that Aerospace was not obstructed from responding to the RFP. Instead, Aerospace concedes that it voluntarily chose not to bid. Plaintiff's only remaining allegations are generalized and conclusory. Indeed, Aerospace's remaining allegations actually support that the HUB Program does not harm companies like Plaintiff. Aerospace alleges that other affiliated and similarly situated staffing companies are actively bidding and winning Texas agency contracts, [Complaint ¶ 30, 33–35].

15

Now that the statute at issue has been shown not to include the language used by Plaintiff as the basis for this lawsuit, it is clear that Plaintiff has failed to state a claim upon which relief could be granted. Therefore, Plaintiff's claims should be dismissed under Rule 12(b)(6).

## C.    The Section 1981 Claims Should be Dismissed Because There Has Been No Actual Loss.

Aerospace's Section 1981 claims should be dismissed because Aerospace failed to establish "the loss of an actual, not speculative contract interest." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001). Aerospace makes the conclusory allegation that the "HUB Program discriminates on the basis of race in violation of 42 U.S.C. § 1981." [Complaint ¶ 60]. Section 1981 guarantees to "[a]ll persons within the jurisdiction of the United States…the same right to make and enforce contracts…as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

Fifth Circuit precedent requires a plaintiff bringing a section 1981 claim to "establish the loss of an actual, not speculative or prospective, contract interest." *Morris*, 277 F.3d at 751. Plaintiff affirmatively pleaded that it chose not to respond to for the Texas Department of Transportation RFP. Other than that, Plaintiff failed to allege that the HUB Program interfered with anything. It was Plaintiff's own misconceptions of the statutory language that interfered with its hope "to expand into public sector work with Texas state agencies." [Complaint ¶ 38]. To be clear, Aerospace does not allege that it has ever bid on a contract with a Texas state agency.

An allegation of the "mere possibility" that the HUB Program "would interfere" with Aerospace's right to contract in the future, "is insufficient to support recovery under § 1981." *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003). Since Aerospace does not allege that it ever bid on a contract, its allegation that it has "an eye towards expanding into public sector contracts" is entirely speculative. [Complaint ¶ 5]. The Fifth Circuit stated, where a party "has engaged in an actual attempt to contract that was thwarted by the merchant, courts have been

16

willing to recognize a section 1981 claim." *Morris*, 277 F.3d at 752.  Aerospace failed to allege that it ever engaged in an "actual attempt" to contract with a Texas agency.  Aerospace alleges only that it chose not to bid and that it generally has "an eye towards expanding into public sector contracts," but these may never materialize.  [Complaint ¶¶ 5, 44].  Plaintiff's own language, included in its complaint, shows that Aerospace's Section 1981 claim is purely speculative.

The Fifth Circuit approvingly cited a Federal District Court's holding that a "§ 1981 claim must allege that the plaintiff was 'actually prevented, and not merely deterred'" from contracting. *Morris*, 277 F.3d at 752 (citing *Henderson v. Jewel Food Stores, Inc.*, No. 96 C 3666, 1996 WL 617165 at *3–4 (N.D. Ill. Oct. 23, 1996)).[6]  Assuming arguendo that the HUB Program "deterred" Aerospace from submitting a bid, its Section 1981 claim remains speculative because the HUB Program never "actually prevented" Aerospace from contracting.  *Id.*  A successful Section 1981 claim requires "the loss of an actual, not speculative or prospective, contract interest." *Morris*, 277 F.3d at 751.  Therefore, Aerospace's failure to bid on any state agency contracts requires dismissal of its Section 1981 claims under Federal Rule of Civil Procedure 12(b)(6).

**D.      Plaintiff Lacks Standing to Sue.**

To establish standing, the Plaintiff must show: "(i) that [it] suffered an injury in fact . . . ; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  Plaintiff's Complaint should be dismissed because it cannot establish any of these elements.

---

[6] Allowing entities to sue without submitting a bid (even when they were not obstructed or hindered from submitting a bid) would be problematic.  It would allow any company, whether qualified for the contract or not, to refuse to submit a bid and then call "foul." This practice would be antithetical to efforts to promote judicial efficiency.

17

i.    **Plaintiff Fails to Allege an Injury in Fact.**

To establish an "injury in fact," Plaintiff must allege facts showing that at the time this suit was filed it suffered a harm, which was both concrete and particularized, and either actual or imminent.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  As to the first prong, the injury cannot be "conjectural or hypothetical" and must directly and individually impact the Plaintiff.  *MGM Resorts International Global Gaming Dev. v. Malloy*, 861 F.3d 40, 45 (2017) (citing *Adarand Constructors v. Pena*, 515 U.S. 200, 211 (1995)).  The second prong requires that the injury be either actual or "certainly impending" and "not too speculative."  *Id.* (quoting *Lujan*, 504 U.S. at 565 n.2).

Plaintiff cannot merely plead "a grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law."  *Carney v. Adams*, 592 U.S. 53, 58 (2020) (citation omitted).  Generalized grievances do not count as an "injury in fact," and consequently, do not show standing.  *Id.*  Facts must be pleaded to "differentiate [Plaintiffs] from a general population of individuals affected in the abstract by the legal provision [under] attack[ ]."  *Id.*

Here, Plaintiff did not suffer an injury in fact.  Plaintiff alleges that, "[i]nstead of taking the time and effort to submit a non-competitive bid, Aerospace Solutions chose not to respond to the Texas Department of Transportation RFP."  [Complaint at ¶ 44].  As stated above, Plaintiff made this decision despite the fact it could have submitted a competitive bid, and even though every respondent (even HUBs) was required to respond following the same set of requirements, including an HSP.

Otherwise, the only remaining factual allegations specific to Aerospace's claims are the generalized and conclusory allegations that the "HUB Program violates the Equal Protection

Clause's demand that the government not discriminate on the basis of race." [Complaint ¶ 6]. These conclusory allegations are not enough, however, to establish injury in fact because Plaintiff fails to allege that it has been injured by a discriminatory policy or scheme. Unlike the program in *Jacksonville*, the HUB Program does not set aside contracts for HUBs and as more fully explained below, any responding company can bid on and be awarded any contract. *See City of Jacksonville v. Jacksonville Shipyards, Inc.*, 508 U.S. 656 (1993). And while some contracts include reference to the aspirational HUB utilization goals, Plaintiff does not allege that it has lost out on a single contract that it applied for or that it is likely to lose out on a contract in the future. If anything, Plaintiff's remaining allegations are generalized grievances that amount to nothing more than abstract and generalized harm to a citizen's interest in the proper application of the law. *See Carney*, 592 U.S. at 58. Accordingly, Plaintiff did not allege an injury in fact, lacks standing, and its claims should be dismissed under Rule 12(b)(1).

### ii. Defendant Did Not Cause Plaintiff's Injury.

As explained above, Plaintiff "chose not to respond to the Texas Department of Transportation RFP." [Complaint at ¶ 44]. Plaintiff made this decision despite the fact it could have submitted a competitive bid, and every respondent (even HUBs) was required to respond following the same set of requirements, including an HSP. Therefore, Plaintiff caused its own injury, if one even exists, and Plaintiff's claims should be dismissed under Rule 12(b)(1).

### iii. Plaintiff Failed to Allege Any Injuries Would be Redressed by Enjoining the HUB Program.

Plaintiffs' failure to show a redressable injury that is fairly traceable to Defendant is an independent basis for dismissal. To establish standing, "plaintiffs must not only trace an injury in fact to the defendant's conduct, but they also must establish that their requested relief will redress the injury." *Mann Constr., Inc. v. United States*, 86 F.4th 1159, 1162 (6th Cir. 2023) (*citing Steel*

*Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)).  "If that relief does nothing to redress the alleged injury, a court could do nothing more than issue a jurisdiction-less 'advisory opinion.'" *Id.* (quoting *California v. Texas*, 141 S. Ct. 2104, 2116 (2021)).  And to establish an injury that is "fairly traceable to the [HUB] program and its race and gender preferences," Plaintiffs must do more than speculate "that invalidating the allegedly unconstitutional preferences would ameliorate [Plaintiff's] ability to compete in any way." *Cache Valley Elec. Co. v. Utah Dep't of Transp.*, 149 F.3d 1119, 1123 (10th Cir. 1998).

Here, Plaintiff makes nothing more than conclusory allegations that "because Aerospace Solutions does not qualify as a HUB, it is at a significant disadvantage when bidding on state contracts." [Complaint ¶ 5].  Even if the HUB Program was enjoined, Aerospace would still need to compete for contracts.  They could only do this if they were actually qualified, willing, and able to fulfill these contracts.  However, beyond the blanket statement that Aerospace is "qualified, willing, and able to bid" on state contracts, there are no underlying factual contentions to support that Aerospace could bid, win, and fulfill state agency contracts.  Thus, without alleging underlying facts to show its capability to handle such contracts, or any allegations to show that its alleged injuries would be redressed by the relief it seeks, Plaintiff failed to meet its burden.  Therefore, Plaintiff lacks standing, and its claims should be dismissed for this reason as well.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant Glenn A. Hegar, Jr. respectfully prays the Court grant this Motion, dismiss all claims in Plaintiff's Complaint with prejudice, and grant Defendant such other or further relief, in law or equity, which the Court deems just and proper.

**DEFENDANT GLENN A. HEGAR, JR.'S**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

Respectfully submitted,

*/s/ Jeff Whitfield*
Jeff Whitfield
State Bar No. 24060825
jeff.whitfield@kellyhart.com
C. Andrew Weber
State Bar No. 00797641
andrew.weber@kellyhart.com
Ruth R. Hughs
State Bar No. 24042788
ruth.hughs@kellyhart.com
John C. Fronk
State Bar No. 24126086
john.fronk@kellyhart.com
KELLY HART &HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Telecopier: (817) 878-9280

**ATTORNEYS FOR GLENN A. HEGAR JR., in his official capacity as Texas Comptroller of Public Accounts**

## CERTIFICATE OF SERVICE

On March 26, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jeff Whitfield*
Jeff Whitfield